## N. SANSBURY v. THE STATE.

1. THEFT — INDICTMENT. — The word "property" being a term of more extensive signification than the words "corporeal personal property," and comprehending the latter and all other descriptions of property, an indictment for theft may, in the allegation of ownership, use the general word "property," instead of the phrase "corporeal personal property."

2. SAME. — National bank-notes are "property," and United States treasury-notes are both "property" and "money," within the provisions of the Code defining theft.

3. CONTINUANCE. — A first continuance is a matter of right when the requirements of the statute have been complied with.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The case is stated in the opinion.

*G. Davis*, for the appellant.

*W. B. Dunham*, for the State.

White, J. As defined by our statute, "theft is the fraudulent taking of corporeal personal property belonging to another, from his possession or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.".

By article 2390, Paschal's Digest, it is further declared " that the term ' property,' as used in relation to the crime of theft, includes money, bank-bills; goods of every description commonly sold as merchandise; every kind of agricultural produce; clothing; any writing containing evidence of an existing debt, contract, liability, promise, or ownership of property; any receipt for money, discharge, release, acquittance; any printed book or manuscript; and, in general, any and every article commonly known as, and called, personal property, and all writings of every description, provided such property possesses any ascertainable value."

The indictment in this case charges defendant with theft of money. The money is described in part as silver of the current coin of the United States of America; in part of Mexican half and quarter-dollar pieces; in part of treasury-notes of the United States of America; and in part of national bank-bills. The denomination and value of each of the different kinds of money is set out, and with regard to the description it is added that "a more particular description of which is unknown to the grand jury."

Several grounds have been strenuously urged against the validity of this indictment, the most important of which we propose to notice.

The first objection is that the property is not described as the "*corporeal personal* property" of the alleged owner. This objection, we think, is fully met by the averment, "being then and there the property of John Condon." It has never been held that the exact words used in the statute should be invariably followed in charging the offense. The rule is that, "in an indictment for an offense created by statute, though it is not in general necessary to follow the exact words of the statute descriptive of the offense, yet, where a word not in the statute is substituted for one that is, the word thus substituted must be equivalent to the word used in the statute, or (if restrictive of general words used in the same connection) of a more extensive signification than it, and include it, or it will not be sufficient." *The State* v. *Wapperman*, 13 Texas, 33. Now, the word "property" is of more extensive signification than the words "corporeal personal property," and it includes the latter description of property of every character.

The second objection is that United States treasury-notes and national bank-bills are not the subjects of theft under our law, for two reasons: first, because they are not money, but simply evidences of a promise to pay money; and, second, that in case they could be considered money, then the statute above quoted (Pasc. Dig., art. 2390), including "money" and "bank-bills" in the term "property" as used in relation to the crime of theft, cannot embrace this "money" and these bank-bills, because the statute was adopted long anterior to the existence of treasury-warrants and national banks, and certainly must have been passed without reference to them.

In support of the proposition that treasury-warrants or notes, and national bank-bills, are not money, and consequently not the subject of theft, we have been referred by zealous counsel to quite a number of authorities, and amongst them to the opinion of our learned chief justice

in *Block* v. *The State*, 44 Texas, 620. That was a case of embezzlement, and because the statute for that offense (art. 2421) limited the objects that might be embezzled to " money or property," and because there was no general definition of " money" in other parts of the Code which included bank-bills or other circulating medium current as money, the word " money," in reference to that particular statute, was held to embrace and mean simply " current metallic coins." But in that very case it was held that, with reference to the offense of swindling (Pasc. Dig., arts. 2426, 2427), the Legislature had extended the word " money" so as to include bank-bills in the offense. And it was also said in that case that, " if the notes had been shown to be legal-tender treasury-notes," even in embezzlement " it might have been plausibly contended that they were money which by law can be given in discharge of judgments rendered in our courts for money generally."

It is unnecessary to go to the rules of the common law, or the decisions of other states, for authority or precedent. As we have seen by the express words of article 2390 of Paschal's Digest, the term " property, in relation to the crime of theft," is made by our law to include " money, bank-bills," etc. That United States treasury-notes are not only considered property as well as money, and that, too, property of the most valuable kind, we need but look to the earnest and unceasing efforts daily and hourly made by our people to obtain and accumulate them. It is, perhaps, unnecessary for us to remark that, as part of the history of the times, they are considered of such value that quite a respectable party of our fellow-citizens, whether correct in their views or not, are now, and have been, urgently insisting and demanding that the quantity in circulation be largely increased by the government, as the best and safest method of relieving the finances and of encour-

aging and protecting the growing industries of the country. The objection urged to the indictment in this respect is untenable ; when tested by the authorities, it will be found entirely sufficient. *Boyle* v. *The State*, 37 Texas, 360 ; *Martinez* v. *The State*, 41 Texas, 164 ; *Ridgeway* v. *The State*, 41 Texas, 231 ; *Lavarre* v. *The State*, 1 Texas Ct. App. 685.

With regard to the second objection urged to the indictment, it is insisted that the term " property " in the crime of theft, as used in the statute, if applicable to money and bank-bills, can have no possible reference to, nor can it embrace, treasury-notes and national bank-bills, because at the time the statute was adopted there was no such money or circulating medium in existence, nor indeed even in contemplation. It seems to us that if the argument be good in this instance, it might equally hold in reference to many other offenses. Take, for instance, theft of animals. Will it be seriously urged that a horse foaled since February 12, 1858, when that act was passed, cannot be legitimately the subject of theft under this act, because he was not in existence when it was passed ? We imagine no authority has ever gone to the extent of enunciating such a doctrine. To our minds the two propositions are of a parallel, and the one is entitled to as much consideration as the other.

While we are of opinion that none of the objections urged against the indictment are good, we are equally as clear in our opinion that the case should be reversed because of error committed by the court in overruling the defendant's application for a continuance. This application is set out in full, in a bill of exceptions duly saved and allowed by the court. The affidavit states that on November 8th defendant was arrested and placed in jail. On the 12th he was brought into court, and, by order of the court, gave the names of ₁three witnesses who resided in Travis County,

and subpœnas were issued for them.   From what follows, we infer that at that time defendant was not represented by counsel, and the court of its own motion ordered these subpœnas upon defendant's giving the names of his witnesses. On the 13th, the next day, before the case was called for trial, the court appointed counsel for defendant, who immediately caused subpœnas to be issued, and placed in the hands of the sheriff, for other witnesses, most of whom it was alleged lived in the city of Austin.   Neither of the subpœnas were returned.   The facts expected to be proven by the witnesses are fully set out, and are material.   If true, they not only establish an *alibi*, but would also account for the money which defendant had deposited with the barkeeper Jake.   We do not know, nor can we pretend to say, that he could have proven these facts by his witnesses had they been summoned and brought into court.   What we do say is that the application being the first, and showing diligence and a compliance with the statute, was a matter of right, and should have been granted.   *Peeler* v. *The State*, 2 Texas Ct. App. 455 ;  *Richardson* v. *The State*, 2 Texas Ct. App. 322.

The attention of the court below is also called to an error committed in the charge to the jury with reference to the punishment for theft of property under $20.    Gen. Laws Fifteenth Legislature, 242.   The Code requires that the law applicable to the case should be given to the jury.  *Buford* v. *The State*, 44 Texas, 545.

The judgment of the District Court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*